IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | |
|---|---|
| UMBRA TECHNOLOGIES LTD. (UK),<br>UMBRA TECHNOLOGIES LIMITED (CN),<br>& UMBRA TECHNOLOGIES (US) INC.,<br>d/b/a UMBRA TECHNOLOGIES, | |
| Plaintiffs, | Civil Action No. 1:23-cv-00903-DII |
| v. | JURY TRIAL DEMANDED |
| CISCO SYSTEMS, INC., | |
| Defendant. | |

**CISCO SYSTEMS, INC.'S MOTION TO DISMISS**

# TABLE OF CONTENTS

Page

I.    INTRODUCTION ................................................................................................1

II.   BACKGROUND ................................................................................................2

III.  GOVERNING LAW AND ARGUMENT .........................................................3

   A.    Pleading Standards........................................................................................ 3

   B.    UMBRA Fails to Set Forth Sufficient Facts to Plead Willful Infringement........... 3

         1.    Willful Infringement Standard ................................................................ 3

         2.    UMBRA's Willfulness Allegations Fail ..................................................... 4

   C.    UMBRA Fails to Set Forth Sufficient Facts to Plead Indirect Infringement.......... 6

         1.    Induced Infringement Standard.................................................................. 6

         2.    UMBRA's Induced Infringement Allegations Fail..................................... 7

         3.    UMBRA Also Fails to Plead Specific Intent to Induce ............................. 8

   D.    UMBRA Fails to Set Forth Sufficient Fact to Plead Contributory
         Infringement.................................................................................................. 9

         1.    Contributory Infringement Standard........................................................... 9

         2.    UMBRA's Contributory Infringement Allegations Fail............................ 9

   E.    The Claims of the '595 Patent Are Directed to Ineligible Subject Matter............ 10

         1.    Patentable Subject Matter Standard ......................................................... 10

         2.    Overview of the '595 Patent. .................................................................. 11

         3.    The Asserted '595 Patent Is Invalid Under Both Steps of the Alice Test. 13

               a.    Alice Step 1: The '595 Patent is Directed Towards an
                     Abstract Idea ..............................................................................13

               b.    Alice Step 2: The '595 Patent Lacks an Inventive Concept. .........16

IV.   CONCLUSION................................................................................................18

## **TABLE OF AUTHORITIES**

**Cases**

*Affinity Labs of Tex., LLC v. Blackberry Ltd.*, No. 6:13-cv-00362-WSS ........................................8

*Affinity Labs of Tex., LLC v. DIRECTV*, LLC, 838 F. 3d 1253 (Fed. Cir. 2016) .................... 14-15

*Alarm.com Inc. v. ipDatatel, LLC*, 383 F. Supp. 3d 719 (S.D. Tex. 2019) ..................................16

*Alice Corp. v. CLS Bank Int'l*, 573 U.S. 208 (2014).............................................................*Passim*

*Amdocs (Isr.) Ltd v. Openet Telecom, Inc.*, 841 F.3d 1288 (Fed. Cir. 2016) ...............................14

*Artrip v. Ball Corp.*, 735 F. App'x 708 (Fed. Cir. 2018).................................................................9

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) .........................................................................................3

*Ask Sydney, LLC v. Amazon.com Servs., LLC*, No. 6:23-cv-00108-XR, Dkt. 24
    (W.D. Tex. Aug. 14, 2023) .....................................................................................................11

*Atlas Global Techs., LLS v. Sercomm Corp.*, 638 F. Supp. 3d 721 (W.D. Tex.
    2022) ................................................................................................................................. 6-7

*Bell Atl., Corp. v. Twombly*, 550 U.S. 544 (2007) ..........................................................................3

*In re Bill of Lading Transmission & Processing Sys. Pat. Litig.*, 681 F.3d 1323
    (Fed. Cir. 2012).......................................................................................................................7

*BillJCo, LLC v. Apple Inc.*, 583 F. Supp. 3d 769 (W.D. Tex. 2022)................................... 4-5, 10

*Bilski v. Kappos*, 561 U.S. 593 (2010).........................................................................................11

*CardioNet, LLC v. InforBionic Inc.*, 955 F.3d 1358 (Fed. Cir. 2020) ...........................................14

*Commil USA, LLC v. Cisco Sys., Inc.*, 575 U.S. 632 (2015) .......................................................6, 9

*Content Extraction & Transmission LLC v. Wells Fargo Bank, Nat. Ass'n*, 776
    F.3d 1343 (Fed. Cir. 2014) ...............................................................................................11, 14

*CyberFone Systems, LLC v. CCN Interactive Group, Inc.*, 558 F. App'x 998 (Fed.
    Cir. 2014) ..............................................................................................................................16

*DDR Holdings, LLC v. Hotels.com, L.P.*, 773 F.3d 1245 (Fed. Cir. 2014)..................................18

*Elec. Power Grp., LLC v. Alstom S.A.*, 830 F.3d 1350 (Fed. Cir. 2016) .......................... 14-15, 17

*Front Row Techs., LLC v. Cisco Sys., Inc.*, No 6:23-cv-00035-AM, Dkt. 25 (W.D.
    Tex. Sept. 13, 2023)...............................................................................................................11

*Halo Elecs., Inc. v. Pulse Elecs., Inc.*, 579 U.S. 93 (2016)................................................4

*Health Discovery Corp. v. Intel Corp.*, 577 F. Supp. 3d 570 (W.D. Tex. 2021)..........................11

*Hewlett-Packard Co. v. Bausch & Lomb Inc.*, 909 F.2d 1464 (Fed. Cir. 1990)..........................9

*Intell. Ventures I LLC v. Cap. One Bank (USA)*, 792 F.3d 1363 (Fed. Cir. 2015).....................17

*Kirsch Research & Develop., LLC v. IKO Indus., Inc.*, No. 6:20-cv-00317-ADA ......................4

*Lifetime Indus., Inc. v. Trim-Lok, Inc.*, 869 F.3d 1372 (Fed. Cir. 2017) .......................................7

*Lone Star Fund V (U.S.), L.P. v. Barclays Bank PLC*, 594 F.3d 383 (5th Cir. 2010) ................................................................................................................................3

*Mayo Collaborative Servs. V. Prometheus Labs., Inc.*, 566 U.S. 66 (2012) ..........................16-17

*McZeal v. Sprint Nextel Corp.*, 501 F.3d 1354 (Fed. Cir. 2007) ...................................................10

*Meetrix IP, LLC v. Cisco Sys., Inc.*, No. 1:18-cv-0309-LY ......................................................6-7

*MEMC Electr. Materials, Inc. v. Mitsubishi Materials Silicon Corp.*, 420 F.3d 1369 (Fed. Cir. 2005)..........................................................................................................6

*MONEC Holding AG v. Motorola Mobility, Inc.*, 897 F. Supp. 2d 225 (D. Del. 2012) ..................................................................................................................................7

*Monolithic Power Sys., Inc. v. Meraki Integrated Cir. (Shenzhen) Tech., Ltd.*, No. 6:20-cv-00876-ADA ...........................................................................................6, 10

*Mortg. Grader, Inc. v. First Choice Loan Serv. Inc.*, 811 F.3d 1314 (Fed. Cir. 2016) ..................................................................................................................................17

*Neonode Smartphone LLC v. Samsung Elecs. Co. Ltd.*, No. 6:23-cv-00204-ADA......................5

*Planet Bingo, LLC v. VKGS, LLC*, 576 Fed. Appx. 1005 (Fed. Cir. 2014)..................................14

*SAP Am., Inc. v. InvestPic, LLC*, 898 F.3d 1161 (Fed. Cir. 2018) ...............................................16

*Smartflash LLC v. Apple Inc.*, 680 F. App'x 977 (Fed. Cir. 2017).................................................17

*Specialized Monitoring Solutions, LLC v. ADT LLC*, 367 F.Supp. 3d 575 (E.D. Tex. 2019)......................................................................................................................16

*State Indus., Inc. v. A.O. Smith Corp.*, 751 F.2d 1226 (Fed. Cir. 1985) ........................................5

*Summit 6 LLC v. HTC Corp.*, No. 7:14-CV-00014-O, 2015 WL 11117867 (N.D. Tex. May 28, 2015)..................................................................................................14

*Textile Comp. Sys., Inc. v. Broadway Nat'l Bank*, No. 6:21-cv-01050-ADA, Dkt. 58 (W.D. Tex. Aug. 5, 2022) ................................................................10

*In re TLI Commc'ns LLC Pat. Litig.,* 823 F. 3d 607 (Fed. Cir. 2016)............................................15

*Trading Techs. Int'l, Inc. v. IBG, LLC*, 921 F.3d 1378 (Fed. Cir. 2019)......................................14

*Traxcell Techs., LLC v. Verizon Wireless Personal Comms., LP*, No. 6:20-cv-01175-ADA..............................................................................................................8-9

*WBIP, LLC v. Kohler Co.*, 829 F.3d 1317 (Fed. Cir. 2016) ..............................................................5

**Statutes**

35 U.S.C. § 101 .................................................................................................................*Passim*

Patent Act Section 271(b) ....................................................................................................6

Patent Act Section 271(c) ....................................................................................................9

Patent Act Section 284 ........................................................................................................3

**Other Authorities**

Rule 12(b)(6) ...........................................................................................................3, 11, 18

Defendant Cisco Systems, Inc. ("Cisco") moves this Court to dismiss the pre-suit allegations of induced, contributory, and willful infringement, as set forth in the Complaint for patent infringement filed by Plaintiffs UMBRA Technologies, Ltd. (UK), UMBRA Technologies Limited (CN), and UMBRA Technologies (US) Inc., d/b/a Umbra Technologies (collectively "UMBRA" or "Plaintiffs") against Cisco. Each of these allegations are made with respect to asserted U.S. Patent Nos. 10,574,482 ("the '482 Patent"), 10,630,505 ("the '505 Patent"), 11,108,595 ("the '595 Patent"), and 11,146,632 ("the '632 Patent") (collectively the "Asserted Patents"). Cisco additionally moves this Court to dismiss UMBRA's infringement claims related to the '595 Patent as it is patent-ineligible under 35 U.S.C. § 101.

## I.    INTRODUCTION

The Complaint offers vague allegations that Cisco had knowledge of "UMBRA's intellectual property" through "in-person, telephonic, videoconference, online chat, and email discussions" between unidentified "representatives for Cisco and UMBRA" and through "general sales and marketing discussions" with unidentified "Cisco representatives, employees and customers prior to 2021." These vague allegations are not plausible evidence either of Cisco's pre-suit knowledge of the Asserted Patents or Cisco's knowledge of infringement of those patents, at least because (1) having knowledge of unidentified "intellectual property" technology does not rise to the level of having knowledge of a patent or infringement of that patent, (2) the allegations are so generalized as to be meaningless (lacking any specifics from which to infer pre-suit knowledge of the Asserted Patents by Cisco) and (3) the vague date ("prior to 2021") of alleged knowledge predates the issue date of two of the four Asserted Patents, as the '632 Patent issued on October 12, 2021 and the '595 Patent issued on August 31, 2021. Accordingly, UMBRA fails to allege *facts* demonstrating that Cisco had the required pre-suit knowledge of the Asserted Patents or pre-suit knowledge of any allegedly infringing acts, both of which are required for

indirect and willful infringement allegations. Similarly, UMBRA fails to plead facts demonstrating that Cisco had any specific intent to infringe, which warrants dismissal of both UMBRA's induced infringement and willful infringement claims. Finally, as to contributory infringement, UMBRA merely parrots the legal standard in a conclusory and speculative way, without plausible factual support.

Additionally, the claims of the '595 Patent are directed to the abstract idea of data or information manipulation, specifically retrieving, organizing and then transmitting a list of resources—available servers. This is a long-standing human endeavor, automated by replacing the human decision-maker with generic computing technology. Because there is nothing to salvage the claims from patent ineligibility, the claims are ineligible under the governing two-step *Alice* framework.

## II.    BACKGROUND

On August 2, 2023, UMBRA filed suit against Cisco, accusing it of infringing the Asserted Patents, each of which is alleged to be directed to "improving performance of internet connections and large networks." Dkt. 1 at ¶ 12. UMBRA alleges that Cisco directly infringes, induces infringement, contributorily infringes, and willfully infringes each of the Asserted Patents. *Id*. at ¶¶ 27, 31, 34, 40, 44, 47, 53, 57, 60, 66, 70, 73. The '632 Patent issued on October 12, 2021, the '595 Patent issued on August 31, 2021, the '505 Patent issued on April 21, 2020, and the '482 Patent issued on February 25, 2020. Dkt. 1-4 at 2, 1-3 at 2, 1-2 at 2, 1-1 at 2,

For each of the Asserted Patents, UMBRA includes the same vague "factual" assertion of knowledge "prior to 2021" by stating that "in person, telephonic, videoconference, online chat and email discussions" occurred between Cisco and UMBRA pertaining to unspecified UMBRA "intellectual property, and its products and services" which occurred "during customer service calls, as well as general sales and marketing discussions in the Asian-Pacific region with Cisco

representatives, employees and customers." Dkt. 1 at ¶¶ 30, 33 43, 46, 56, 59, 69, 72. Based on these purported "facts," UMBRA alleges in conclusory fashion that because Cisco had knowledge of the Asserted Patents, Cisco has induced and continues to induce "others," including unnamed "partners and customers." *Id*. at ¶¶ 31, 44, 57, 70. UMBRA relies on these same vague and conclusory assertions of knowledge in its allegations that Cisco is also liable as a contributory infringer (*id*. at ¶¶ 34, 47, 60, 73) and that that Cisco's infringement has been and continues to be willful (*id*. at ¶¶ 35, 48, 61, 74). The Complaint contains no other "factual" support regarding Cisco's alleged knowledge.

## III.    GOVERNING LAW AND ARGUMENT

### A.    Pleading Standards

Rule 12(b)(6) requires that a complaint contain sufficient factual matter to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl., Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). To satisfy the plausibility standard, a plaintiff must plead facts that allow "the court to draw the reasonable inference that the defendant is liable for the misconduct alleged," based on "more than a sheer possibility that a defendant has acted unlawfully." *Id*. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id*. In resolving a motion to dismiss for failure to state a claim, the "court's task is to determine whether the plaintiff has stated a legally cognizable claim that is plausible, not to evaluate the plaintiff's likelihood of success." *Lone Star Fund V (U.S.), L.P. v. Barclays Bank PLC*, 594 F.3d 383, 387 (5th Cir. 2010) (citing *Iqbal*, 556 U.S. at 678).

### B.    UMBRA Fails to Set Forth Sufficient Facts to Plead Willful Infringement

#### 1.    Willful Infringement Standard

Section 284 of the Patent Act provides that a court may increase damages found or assessed for patent infringement. 35 U.S.C. § 284. To state a claim of willful patent infringement sufficient

to withstand a motion to dismiss, a plaintiff must allege facts plausibly showing that the accused infringer: "(1) knew of the patent-in-suit; (2) after acquiring that knowledge, it infringed the patent; and (3) in doing so, it knew or should have known that its conduct amounted to infringement of the patent." *BillJCo, LLC v. Apple Inc.*, 583 F. Supp. 3d 769, 774 (W.D. Tex. 2022). "Mere knowledge of the Asserted Patents is not enough" to establish knowledge of infringement. *Id*. at 777. A plaintiff seeking enhanced damages for willful patent infringement "must show that an infringer's conduct has been 'willful,' or 'wanton, malicious, bad-faith, deliberate, consciously wrongful, flagrant, or—indeed—characteristic of a pirate.'" *Id*. at 774 (quoting *Halo Elecs., Inc. v. Pulse Elecs., Inc.*, 579 U.S. 93, 103-04 (2016)).

### 2.    UMBRA's Willfulness Allegations Fail

First, as required by well-established legal pleading requirements, UMBRA does not plead facts sufficient to allege Cisco's pre-suit knowledge of the Asserted Patents, let alone that Cisco knew that any of its conduct infringed (or could infringe) the Asserted Patents. Instead, UMBRA cobbles together random vague assertions to form the basis of Cisco's alleged knowledge of the Asserted Patents, with a conclusory punch line that Cisco's infringement is willful. UMBRA does not allege that Cisco was aware of the Asserted Patents themselves, but rather that there was some form of communication (and UMBRA does not even narrow it down to a specific type of communication, alleging it could have been "in-person, telephonic, videoconference, online chat, and email") between unidentified "representatives" generally "pertaining to UMBRA's intellectual property, and its products and services" during "customer service calls, as well as general sales and marketing discussions" at some unspecified time "prior to 2021." Dkt. 1 at ¶¶ 30, 33 43, 46, 56, 59, 69, 72. UMBRA fails to (i) allege any specific patent was identified to Cisco, (ii) identify the contents of any discussions with any specificity, and (iii) identity anyone in particular at Cisco who was notified of anything (much less the Asserted Patents). *See Kirsch*

*Research & Develop., LLC v. IKO Indus., Inc.*, No. 6:20-cv-00317-ADA, WL 4555610 at *2 (W.D. Tex. Oct. 4, 2021) (granting dismissal because allegations "reveal[] nothing about the nature of Defendants' inquiry that would permit a reasonable inference of Defendants' knowledge of the [] patent."). UMBRA's vague allegations are also insufficient to establish Cisco had knowledge of the '595 Patent and '632 Patent which issued on August 31, 2021 and October 12, 2021, respectively—after the vague "knowledge" was allegedly obtained.[1] *See State Indus., Inc. v. A.O. Smith Corp.*, 751 F.2d 1226, 1236 (Fed. Cir. 1985) ("To willfully infringe a patent, a patent must exist and one must have knowledge of it.").

A second independent ground for dismissal is that UMBRA's allegations offer no support for any conclusion that Cisco knew or should have known that any of its conduct amounted to infringement of the Asserted Patents. Absent knowledge of the alleged infringement, there can be no willful infringement. *WBIP, LLC v. Kohler Co.*, 829 F.3d 1317, 1341 (Fed. Cir. 2016). Simply put, the Complaint is devoid of any facts sufficient to allege actual knowledge of the Asserted Patents, let alone that Cisco knew that any of its conduct infringed (or could infringe) the Asserted Patents, and UMBRA's threadbare allegations should be dismissed. *See Neonode Smartphone LLC v. Samsung Elecs. Co. Ltd.*, No. 6:23-cv-00204-ADA, WL 5426743 at *4 (W.D. Tex. June 27, 2023) (finding insufficient pre-suit knowledge allegations when plaintiff failed to allege whether it informed defendant of the issuance of the patent-in-suit, the contents of the conversations between the parties, or whether plaintiff specifically informed defendant of the patent-in-suit); *BillJCo*, 583 F. Supp. 3d at 777 (dismissing willfulness allegation where "the totality of [plaintiff's] pleadings on the issue are reed-thin" and complaint failed to allege that the "notice

---

[1] The '482 and '505 Patents issued on February 25, 2020 and April 21, 2020 respectively, both of which could be after the vaguely alleged knowledge was obtained "prior to 2021."

letter" notified defendant that it infringed the asserted patents or any of the accused products); *Monolithic Power Sys., Inc. v. Meraki Integrated Cir. (Shenzhen) Tech., Ltd.*, No. 6:20-cv-00876-ADA, WL 3931910 at *5 (W.D. Tex. Sept. 1, 2021) (dismissing willfulness claims because defendants' alleged knowledge of the asserted patents did not "lead[] to a plausible inference that they knew their conduct amounted to infringement"); *Meetrix IP, LLC v. Cisco Sys., Inc.*, No. 1:18-cv-0309-LY, WL 8261315 at *3 (W.D. Tex. Nov. 30, 2018) (dismissing willfulness claim that stated legal conclusions without sufficient supporting factual content).

### C.    UMBRA Fails to Set Forth Sufficient Facts to Plead Indirect Infringement

Like a willful infringement claim, indirect infringement claims require a showing that the accused infringer knew of its infringement. *See Commil USA, LLC v. Cisco Sys., Inc.*, 575 U.S. 632, 639 (2015) ("Like induced infringement, contributory infringement requires knowledge of the patent in suit and knowledge of patent infringement."). UMBRA's indirect infringement claims therefore fail for the same reasons its willful infringement claims fail. Additionally, UMBRA fails to plead facts plausibly supporting a conclusion that Cisco had the required "specific intent" to induce infringement or engaged in the additional required elements to allege contributory infringement. Thus, UMBRA's indirect infringement allegations cannot stand.

#### 1.    Induced Infringement Standard

Section 271(b) of the Patent Act provides that "[w]hoever actively induces infringement of a patent shall be liable as an infringer." 35 U.S.C. § 271(b). To succeed on such a claim, the patentee must show that the accused infringer (1) knowingly induced direct infringement, and (2) possessed "specific intent" to induce that infringement. *See MEMC Electr. Materials, Inc. v. Mitsubishi Materials Silicon Corp.*, 420 F.3d 1369, 1378 (Fed. Cir. 2005). Both induced infringement and willful infringement require that the alleged infringer have knowledge of the asserted patent. *Atlas Global Techs., LLS v. Sercomm Corp.*, 638 F. Supp. 3d 721, 725 (W.D. Tex.

2022). To state a claim for induced patent infringement, "a complaint must plead facts plausibly showing that the accused infringer 'specifically intended [another party] to infringe [the patent] and knew that the [other party]'s acts constituted infringement.'" *Lifetime Indus., Inc. v. Trim-Lok, Inc.*, 869 F.3d 1372, 1376-77 (Fed. Cir. 2017) (quoting *In re Bill of Lading Transmission & Processing Sys. Pat. Litig.*, 681 F.3d 1323, 1336 (Fed. Cir. 2012)).

### 2.    UMBRA's Induced Infringement Allegations Fail

As described above, UMBRA's basis for alleging Cisco's knowledge of the Asserted Patents or knowledge of any purported infringement of the Asserted Patents is based on unidentified "Cisco representatives, employees and customers," who had "customer service calls, as well as general sales and marketing discussions" sometime prior to 2021 vaguely "pertaining to UMBRA's intellectual property, and its products and services." Dkt. 1 at ¶¶ 30, 33, 43, 46, 56, 59, 69, 72. These allegations are insufficient to constitute the required pre-suit knowledge of either the Asserted Patents or the alleged infringement of the Asserted Patents, as actual knowledge is required to state a plausible claim of indirect infringement. *See MONEC Holding AG v. Motorola Mobility, Inc.*, 897 F. Supp. 2d 225, 232 n.6 (D. Del. 2012) ("[A]ctual (not constructive) knowledge of the patent-in-suit is necessary to state a claim for indirect infringement under the Supreme Court's decision in *Global-Tech*, unless the patentee is claiming willful blindness."). UMBRA pleads actual knowledge in a vague and conclusory fashion, which does not support a plausible indirect infringement claim.

UMBRA's alternative pleading—that Cisco was willfully blind to the resulting infringement—fails also, as it is conclusory and lacks supporting factual allegations. *See Meetrix IP, LLC,* WL 8261315 at *3 (dismissing plaintiff's legal conclusion that defendant "was willfully blind" because it lacked supporting factual allegations and need not be accepted as true). As courts in this District have confirmed, willful blindness in this context requires that the plaintiff show that

"'(1) the defendant subjectively believed that there was a high probability that the infringing technology was patented and (2) the defendant acted deliberately to avoid learning of that fact.'" *Affinity Labs of Tex., LLC v. Blackberry Ltd.*, No. 6:13-cv-00362-WSS, WL 12551207 at *5 (W.D. Tex. Apr. 30, 2014) (citations omitted) (holding that "the defendant's awareness of a plaintiff's patent portfolio is not enough to support a willful blindness claim to defeat a motion to dismiss."). Despite these requirements, UMBRA pleads no facts to sufficiently allege Cisco's subjective beliefs the infringing technology was patented or that it took steps to deliberately avoid learning about the Asserted Patents or alleged infringement.

In sum, there are no plausible allegations that Cisco knew of any of the Asserted Patents, nor are there any allegations to establish that Cisco was willfully blind to them. Accordingly, UMBRA has failed to state a claim for indirect infringement of any of the Asserted Patents.

### 3.    UMBRA Also Fails to Plead Specific Intent to Induce

Finally, UMBRA also fails to plead facts plausibly showing Cisco's specific intent to encourage another party's direct infringement. The Complaint alleges only that Cisco's actions include "distributing the Accused Instrumentalities and providing materials and/or services related to the Accused Instrumentalities."  Dkt. 1 at ¶¶ 32, 45, 58, 71. UMBRA does not identify *what* "materials and/or services" Cisco provides, nor *how* those "materials and/or services" allegedly encourage infringement.

Even if the Court were to consider the claim charts attached to UMBRA's Complaint as sufficiently identifying "materials and/or services," UMBRA's citations fail to describe *how* the content of the "materials and/or services" affirmatively recommend, encourage, or promote infringing use of the Asserted Claims. These limited assertions are the same type of general boilerplate statements courts have found insufficient to plead the specific intent required for inducing infringement. *Traxcell Techs., LLC v. Verizon Wireless Personal Comms., LP*, No. 6:20-

cv-01175-ADA, WL 299732 at *4 (W.D. Tex. Jan. 31, 2022) (dismissing inducement claims because "instructing others to perform an action 'such to cause infringement' does not plead the intent required by law."). Accordingly, UMBRA's induced infringement claims must be dismissed because they fail to plead any knowledge and do not identify any post-knowledge actions that demonstrate specific intent to induce infringement.

### D.    UMBRA Fails to Set Forth Sufficient Fact to Plead Contributory Infringement

#### 1.    Contributory Infringement Standard

Section 271(c) of the Patent Act provides that:

> Whoever offers to sell or sells within the United States or imports into the United States a component of a patented machine, manufacture, combination or composition, or a material or apparatus for use in practicing a patented process, constituting a material part of the invention, knowing the same to be especially made or especially adapted for use in an infringement of such patent, and not a staple article or commodity of commerce suitable for substantial noninfringing use, shall be liable as a contributory infringer.

35 U.S.C. § 271(c). Contributory infringement requires "only proof of a defendant's knowledge, not intent, that his activity cause(s) infringement." *Hewlett-Packard Co. v. Bausch & Lomb Inc.*, 909 F.2d 1464, 1469 (Fed. Cir. 1990). Like inducement, however, "contributory infringement requires knowledge of the patent in suit and knowledge of patent infringement." *Commil USA, LLC v. Cisco Sys., Inc.*, 575 U.S. 632, 639 (2015). To state a claim for contributory infringement, "a plaintiff must plausibly allege that the accused infringer knew of the asserted patents . . . and must 'plead facts that allow an inference that the components sold or offered for sale have no substantial non-infringing uses.'" *Artrip v. Ball Corp.*, 735 F. App'x 708, 713 (Fed. Cir. 2018).

#### 2.    UMBRA's Contributory Infringement Allegations Fail

UMBRA's contributory infringement allegations are boilerplate recitations of the elements of contributory infringement with some passing references to Cisco's website and product

literature to allege the accused products are "especially made or adapted for use in infringement of the [] patent," without any attempt to focus on any specific components or functions in Cisco's Accused Products. UMBRA offers nothing to support its contention that the Accused Instrumentalities "are material components" and "specifically made and are not a staple article of commerce suitable for substantial non-infringing use." As it did in *BillJCo*, the Court should disregard UMBRA's allegation regarding substantial noninfringing uses as conclusory and find that UMBRA has insufficiently pleaded contributory infringement. *Id*. at 782 (citing *McZeal v. Sprint Nextel Corp.*, 501 F.3d 1354, 1356 (Fed. Cir. 2007) ("[C]onclusory allegations or legal conclusions masquerading as factual conclusions will not suffice to prevent a motion to dismiss." (internal citation omitted)); *see also Textile Comp. Sys., Inc. v. Broadway Nat'l Bank*, No. 6:21-cv-01050-ADA, Dkt. 58 (W.D. Tex. Aug. 5, 2022) (dismissing contributory infringement claims based on threadbare statements void of sufficient factual allegations showing how the accused products have no substantial non-infringing use or were specially made or adapted for infringing use); *Monolithic Power Sys., Inc.*, WL 3931910 at *5 (dismissing contributory infringement claims that merely recite the elements with no facts to lead to a plausible inference of any substantial non-infringing use).

     **E.**     **The Claims of the '595 Patent Are Directed to Ineligible Subject Matter.**

          **1.**     **Patentable Subject Matter Standard**

Section 101 of the Patent Act permits "[w]hoever invents or discovers any new and useful process, machine, manufacture, or composition of matter, or any new and useful improvement thereof, [to] obtain a patent therefor, subject to the conditions and requirements of this title." 35 U.S.C. §101. Patentability under 35 U.S.C. § 101 is a threshold legal issue properly raised at the pleading stage if it is apparent from the face of the patent that the asserted claims are not directed to eligible subject matter. *Front Row Techs., LLC v. Cisco Sys., Inc.*, No 6:23-cv-00035-AM, Dkt.

25 at 6-7 (W.D. Tex. Sept. 13, 2023) (citing *Content Extraction & Transmission LLC v. Wells Fargo Bank, Nat. Ass'n*, 776 F.3d 1343 (Fed. Cir. 2014)); *Ask Sydney, LLC v. Amazon.com Servs., LLC*, No. 6:23-cv-00108-XR, Dkt. 24 at 11 (W.D. Tex. Aug. 14, 2023) (citing *Bilski v. Kappos*, 561 U.S. 593, 602 (2010)). In those situations, claim construction, fact discovery, and expert opinions are not required to conduct a § 101 analysis. *Content Extraction*, 776 F.3d at 1349.

To survive a Rule 12(b)(6) motion, the complaint must contain "concrete allegations regarding the 'claimed combination's improvement,'" to survive *Alice* step one and "concrete allegations that 'individual elements and the claimed combination are not well-understood, routine, or conventional activity'" to survive *Alice* step two. *Health Discovery Corp. v. Intel Corp.*, 577 F. Supp. 3d 570, 576 (W.D. Tex. 2021).

## 2.    Overview of the '595 Patent.

The '595 Patent issued on August 31, 2021, from Application No. 17/000,997 filed on August 24, 2020 and is titled, "Systems and Methods for Providing a Global Virtual Network (GVN)." Dkt. 1-3. The '595 Patent specification describes problems with perceived delays in wide area network transmissions that deployed tunnels over the internet for such transmissions due to poor connections between devices and lack of control over the path of the flow of traffic between the devices. Dkt. 1-3 ('595 Patent) at 1:26-28, 1:39-44, 1:50-53. A known solution to this issue included created multi-point switches that helped with connectivity but this solution was time-consuming and expensive to deploy. *Id.* at 1:53-64. Another challenge was latency issues due to the physical distance data had to travel (sometimes globally from country-to-country). *Id.* at 1:64-2:12. Another solution was creating links from one network to another utilizing tunnels which used IPSec or other tunneling protocol between "two routers, firewalls, or equivalent edge devices", but again there was little to no control over the routes between these points. *Id.* at 2:18-27. An alternative—to which the alleged solution of the '595 Patent is directed—was the "global virtual

network (GVN) [which] is a type of network with offers network optimization over the top (OTT) of the internet." *Id.* at 2:40-42. This solution "addresses quality of service (QoS) issues related to the network connectivity" (*id.* at 2:44-46) and involves "a secure tunnel between an end point device (EPD) and an access point server (SVR_AP) linked to the broader GVN global network." *Id.* at 2:49-52.

The claims of the '595 Patent are not directed to a specific technical solution to any of the issues identified in the specification but rather are broadly directed to the unpatentable concept of using a computer to manipulate data or information. Specifically, the claims recite no more than "one or more computer processors" retrieving a list of servers, reordering that information and then sending that reordered information. Using independent claim 1 as exemplary, claim 1 recites the computer processor performs the steps of (1) "receiving" a request for a list of available servers from a network device; (2) "retrieving" the list of available servers; (3) "retrieving" one or more records associated with the network device; (4) "dynamically ordering" the list of available servers based on the one or more records; and (5) "transmitting" the ordered list of available servers to the network device. *Id.* at 32:49-61. Independent claim 8 is directed to a generic system with memory and a processor configured to perform the steps recited in claim 1. *Id.* at 33:14-31. And independent claim 15 recites the generic components of a global virtual network (i.e., an "access point server" and "control server") where the control server is configured to perform the steps described in claim 1. *Id.* at 34:4-24.

In its Complaint, UMBRA describes the technical solution of the '595 Patent as follows:

> The invention of the '595 patent increases the efficiency and effectiveness of a virtualized network as, for example, the ordered server availability list can prioritize address and port combinations based on expected best performance of the tunnels to be built while also looking at other available information, such as contextual information for specific devices. ('595 patent, Ex. 3 at 11:21-26).

Complaint at ¶ 17. But the claims of the '595 Patent recite nothing about prioritizing address and port combinations or building better performing tunnels in a virtualized network, and instead broadly and generically recite a process for creating an ordered "list of available servers" based on generic criteria, i.e., "one or more records", and sending that ordered list:

> 1. A method comprising:
> receiving, by one or more computer processors, a request for a list of available servers from a network device;
> retrieving, by one or more computer processors, the list of available servers;
> retrieving, by one or more computer processors, one or more records associated with the network device; and
> transmitting, by one or more computer processors, the ordered list of available servers to the network device.

'595 Patent, claim 1.

### 3. The Asserted '595 Patent Is Invalid Under Both Steps of the Alice Test

The '595 Patent claims fail both prongs of the *Alice* two-step test: the claims are directed to an abstract idea of data manipulation in the form of retrieving, organizing, and transmitting information and do not contain an "inventive concept sufficient to ensure that the patent in practice amounts to significantly more than a patent upon the ineligible concept itself." *See Alice Corp. v. CLS Bank Int'l*, 573 U.S. 208, 216 (2014).

### a. *Alice* Step 1: The '595 Patent is Directed Towards an Abstract Idea

The first step is to "determine whether the claims at issue are directed to one of those patent-ineligible concepts," *e.g.,* an abstract idea. *Id.* at 217. "*Alice* step one presents a legal question that can be answered based on the intrinsic evidence" and "does not require an evaluation of the prior art or facts outside of the intrinsic record." *CardioNet, LLC v. InforBionic Inc.*, 955 F.3d 1358, 1372 (Fed. Cir. 2020).

13

The step one analysis typically begins "with an examination of eligible and ineligible claims of similar nature from past cases." *Amdocs (Isr.) Ltd v. Openet Telecom, Inc.,* 841 F.3d 1288, 1295 (Fed. Cir. 2016). "Under this inquiry, [courts] evaluate the focus of the claimed advance over the prior art to determine if the character of the claim as a whole, considered in light of the specification is directed to exclude subject matter." *Trading Techs. Int'l, Inc. v. IBG, LLC*, 921 F.3d 1378, 1384 (Fed. Cir. 2019) (quotation omitted).

Where a claim recites "a desired function or outcome, without providing any limiting detail that confines the claim to a particular solution to an identified problem," the "functional nature of the claim confirms that it is directed to an abstract idea." *Affinity Labs of Tex., LLC v. DIRECTV, LLC*, 838 F. 3d 1253, 1269 (Fed. Cir. 2016). The "essentially result-focused, functional character of claim language has been a frequent feature of claims held ineligible under § 101." *Elec. Power Grp., LLC v. Alstom S.A.*, 830 F.3d 1350, 1356 (Fed. Cir. 2016).

Furthermore, a court need not address each patent claim individually if "all the claims are substantially similar and linked to the same abstract idea." *Content Extraction*, 776 F.3d at 1348. Upon such finding, a court may identify one claim as representative of all the claims in the patent challenged under §101. *See Summit 6 LLC v. HTC Corp.*, No. 7:14-CV-00014-O, 2015 WL 11117867, at *1 (N.D. Tex. May 28, 2015). The Federal Circuit also explained that there may be no "meaningful distinction between the method and system claims or between the independent and dependent claims," where "[t]he system claims recite the same basic process as the method claims, and the dependent claims recite only slight variations of the independent claims." *Planet Bingo, LLC v. VKGS, LLC*, 576 Fed. Appx. 1005, 1007 (Fed. Cir. 2014). Here, claim 1 accurately represents the remainder of the claims. Claims 2–7 are dependent claims that are linked to the abstract idea recited in claim 1. *See, e.g.,* Claims 2-3 (reciting conventional network components),

4-6 (reciting criteria for order list of servers) and 7 (reciting that retrieved record is device's identity). Claims 8–14 and 15–20 "recite the same basic process" by merely applying claim 1 steps to a particular environment, *i.e.* a computer and a global virtual network, respectively. *See In re TLI Commc'ns LLC Pat. Litig.,* 823 F. 3d 607, 612 (Fed. Cir. 2016) (where such components lack "any meaningful limitation," they are "merely a conduit for the abstract idea"). In light of the commonality of the claims, this court should view claim 1 as a representative of all the asserted claims of the '595 Patent.

Against this backdrop, claim 1 is directed to the abstract idea of data manipulation in the form of retrieving, organizing and transmitting information. Claim 1 of the '595 Patent recites three steps directed to obtaining information, i.e., (i) "receiving, …, a request for a list of available servers…", (ii) "retrieving, …, the list of available servers", (iii) "retrieving, …, one or more records …"; one step of reorganizing retrieved information, i.e., (iv) "dynamically ordering, …, the list of available servers based on the one or more records …"; and finally sending the reordered retrieved information, i.e., (v) "transmitting, …, the ordered list of available servers …." '595 Patent, claim 1. This simple concept of retrieving information by request, organizing the information, and then transmitting the information is abstract. Courts have found similar claims to be ineligible. *See Affinity Labs of Tex., LLC,* 838 F. 3d at 1261 (finding claims directed to "the conveyance and manipulation of information" invalid); *Elec. Power Grp.,* 830 F.3d at 1353 ("[M]erely presenting the results of abstract processes of collecting and analyzing information, without more (such as identifying a particular tool or presentation) is abstract as an ancillary part of such collection and analysis."); *Alarm.com Inc. v. ipDatatel, LLC*, 383 F. Supp. 3d 719, 728 (S.D. Tex. 2019) ("In the computer-software context, 'collecting information, analyzing it, and displaying certain results of the collection and analysis' are abstract ideas.") (quotations omitted).

Given the parallels between claim 1 of the '595 Patent and case law, this Court should find that the '595 Patent claims the abstract idea of retrieving, organizing, and transmitting information.[2]

> **b.**    *Alice* **Step 2: The '595 Patent Lacks an Inventive Concept.**

The '595 Patent does not have an "inventive concept" that transforms the claims into "significantly more" than the abstract idea. If a claim is directed to ineligible subject matter, then the court must:

> examine the elements of the claim to determine whether it contains an "'inventive concept'" sufficient to "transform" the claimed abstract idea into a patent-eligible application. A claim that recites an abstract idea must include "additional features" to ensure "that the [claim] is more than a drafting effort designed to monopolize the [abstract idea]." *Mayo* made clear that transformation into a patent-eligible application requires "more than simply stat[ing] the [abstract idea] while adding the words 'apply it.'"

*Alice*, 573 U.S. at 221 (quoting *Mayo Collaborative Servs. V. Prometheus Labs., Inc.*, 566 U.S. 66, 77 (2012). This step requires consideration of "the elements of each claim both individually and 'as an ordered combination' to determine whether the additional elements 'transform the nature of the claim' into a patent-eligible application." *Id.* (quoting *Mayo, Inc.*, 566 U.S. at 78-79). Additionally, a court must "search for an 'inventive concept' – *i.e.*, an element or combination of elements that is 'sufficient to ensure that the patent in practice amounts to significantly more than a patent upon the [ineligible concept] itself.'" *Id.* at 217-281 (quoting *Mayo*, 566 U.S. at 72-73).

---

[2] Retrieving, organizing and transmitting information is a long-standing, human activity, similar to concepts previously found to be abstract. *See*, e.g., *SAP Am., Inc. v. InvestPic, LLC*, 898 F.3d 1161, 1167 (Fed. Cir. 2018); *CyberFone Systems, LLC v. CCN Interactive Group, Inc.*, 558 F. App'x 998 (Fed. Cir. 2014); *Specialized Monitoring Solutions, LLC v. ADT LLC*, 367 F.Supp. 3d 575, 582 (E.D. Tex. 2019).  For example, the claimed concept is similar to how a realtor operates.  A realtor receives a request for a list of properties from a client (i.e., "receiving… a request for a list of available servers from a network device") and some criteria about the client (i.e., "retrieving … one or more records"). The realtor can retrieve an initial list of available properties (i.e., "retrieving … the list of available servers"), reorder that list based on the criteria for that client (i.e., "dynamically ordering … the list of available servers") and provide the list to the client (i.e., "transmitting … the ordered list of available servers").

To pass muster, claim 1 must include additional features that "must be more than well-understood, routine, conventional activity." *Mayo*, 566 U.S. at 79. Nothing in claim 1 adds an inventive concept.

First, claim 1 does nothing more than recite that the abstract idea of retrieving, organizing and transmitting information is performed using well-known computer and data processing components and is thus patent ineligible. *See Elec. Power Grp.,* 830 F.3d at 1353-54; *see also Intell. Ventures I LLC v. Cap. One Bank (USA)*, 792 F.3d 1363, 1366 (Fed. Cir. 2015) (limiting the abstract idea to a particular technological environment is insufficient to transform the claimed abstract idea into patent eligible subject matter). Specifically, claim 1, the representative claim, recites only that the steps corresponding to the abstract idea are each performed "by one or more computer processors" ('595 Patent at 32:49-61), which is insufficient to transform the claimed abstract idea into patent eligible subject matter. *Alice*, 573 U.S. at 223 ("[T]he mere recitation of a generic computer cannot transform a patent-ineligible abstract idea into a patent eligible invention."); *Mortg. Grader, Inc. v. First Choice Loan Serv. Inc.*, 811 F.3d 1314, 1324-25 (Fed. Cir. 2016) (generic computer components such as an "interface," "network," and "database" fail to satisfy the inventive-concept requirement); *Smartflash LLC v. Apple Inc.*, 680 F. App'x 977, 983 (Fed. Cir. 2017) ("As such, merely storing, transmitting, retrieving, and writing data to implement an abstract idea on a computer does not 'transform the nature of the claim into a patent-eligible application").[3]

---

[3] The "claimed solution" also has nothing to do with overcoming any technical problems rooted in computer technology. From their inception, computers have been able to retrieve, organize, and transmit information. *Compare DDR Holdings, LLC v. Hotels.com, L.P.,* 773 F.3d 1245, 1257 (Fed. Cir. 2014) (finding the claims patent-eligible because "the claimed solution is necessarily rooted in computer technology in order to overcome a problem specifically arising in the realm of computer networks.").

Second, the elements of the claim, individually and in combination, do not recite an inventive concept. There is nothing remotely inventive about retrieving and ordering a list (even if done "dynamically", e.g., on demand) and sending that ordered list.[4] This is basic human activity. *See supra* n. 2. And the claim does not recite any technical improvement, e.g., in virtual networking, using the dynamically ordered list. Specifically, the claim recites only that the ordered list is sent to the network device that requested it and does not recite that the ordered list is used in any particular way in any technical solution. Therefore, the '595 Patent fails to satisfy *Alice* step 2.

Since the '595 Patent is ineligible under 35 U.S.C. §101, the Court should dismiss UMBRA's claims related to the '595 Patent pursuant to Rule 12(b)(6). Amendment by UMBRA to the Complaint would be futile, therefore, this court should dismiss these claims with prejudice.

## IV.    CONCLUSION

For the foregoing reasons, this Court should grant Cisco's Motion to Dismiss dismissing the pre-suit allegations of induced, contributory, and willful infringement of the Asserted Patents and find the '595 Patent patent-ineligible under 35 U.S.C. § 101.

---

[4] For example, U.S. Patent Application Publication No. 2010/0153558 to Kommula ("Kommula") published June 17, 2010, almost five years before the earliest claimed priority date of the '595 Patent. *See* Ex. A (Declaration of Holly Engelmann), Ex. 1 (Kommula). Kommula describes a process where a request for a list of host servers is received from a client device, a list of IP addresses corresponding to host servers is retrieved, the list is then dynamically ordered based on retrieved criteria, such as proximity of the server to the client, and then the ordered list is sent to the client. Kommula, Abstract, ¶¶ 19, 24, 27, 95, 96, FIGS. 2A-2C.

Dated:  October 13, 2023

Respectfully submitted,

*/s/ Holly Engelmann*
Gilbert A. Greene
State Bar No. 24045976
Holly Engelmann
State Bar No. 24040865
**DUANE MORRIS LLP**
Las Cimas IV
900 S. Capital of Texas Hwy., Suite 300
Austin, Texas 78746
Tel: (512 ) 277-2246
Fax: (512) 597-2301
*BGreene@duanemorris.com*
*HEngelmann@duanemorris.com*

Louis N. Jameson *(pro hac vice pending)*
GA State Bar No. 003970
Alice E. Snedeker
GA State Bar No. 151066
Jayla C. Grant
GA State Bar No. 312669
**DUANE MORRIS LLP**
1075 Peachtree Street NE, Suite 1700
Atlanta, GA 30309
Tel: (404) 253-6915
Fax: (404) 253-6901
*WJameson@duanemorris.com*
*AESnedeker@duanemorris.com*
*JCGrant@duanemorris.com*

***ATTORNEY FOR DEFENDANT
CISCO SYSTEMS, INC.***

## **CERTIFICATE OF SERVICE**

I certify that on October 13, 2023, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which will send notification of such filing to all counsel of record.

*/s/ Holly Engelmann*
Holly Engelmann